UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VLADISLAV BERNSHTEIN,

     *Petitioner*,

v.

U.S. ATTORNEY GENERAL, et al.,

     *Respondents*.

_____/

Case No. 3:25-cv-1153-JEP-PDB

## **ORDER**

Petitioner Vladislav Bernshtein, an immigration detainee at Baker Correctional Institute, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Docs. 1, 11) on September 29, 2025.[1] Respondents filed a motion to dismiss (Doc. 8), and Petitioner filed a reply (Doc. 9). Ultimately, this Court concludes the petition must be granted.

## **I.**

According to Petitioner, he "is a stateless refugee who has been detained since March 31, 2025." (Doc. 11 at 1).[2] He was born in the Soviet Union on May 23, 1980, and entered the United States as a refugee on January 25, 1990. (*Id.*

---

[1] Because Petitioner did not personally sign the initial petition (Doc. 1), the Court directed him to either file a verified copy of the petition or an amended petition. *See* Order (Doc. 10). Petitioner complied by filing a verified copy of the petition (Doc. 11).

[2] Respondents contend that Petitioner is a citizen of Belarus. (Doc. 8 at 2).

at 2). He became a lawful permanent resident on August 16, 1991. (Doc. 8 at 2). After entering a plea of no contest, the state court adjudicated Petitioner guilty of two counts of use or possession of drug paraphernalia in February 2021 and sentenced him to 179 days in jail with credit for 179 days. (*See State v. Bernshtein*, No. 2019 CF 000922 (Fla. 7th Cir. Ct.).[3]

On June 2, 2020, an immigration judge ordered Petitioner's removal. (Doc. 8 at 2). Petitioner appealed, but the Board of Immigration Appeals dismissed his appeal on November 18, 2020. (*Id.*). On December 30, 2020, Enforcement and Removal Operations ("**ERO**") submitted requests for travel documents to Russia and Belarus, however, both countries denied the requests in January 2021. (*Id.*). Because the United States Immigration and Customs Enforcement ("**ICE**") was unable to remove Petitioner to either Russia or Belarus, he was released on an order of supervision on February 2, 2021. (Doc.

---

[3] The Court takes judicial notice of Petitioner's state court dockets. *See* Fed. R. Evid. 201(b)(2) (a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see generally Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649 (11th Cir. 2020) ("State court records of an inmate's postconviction proceedings generally satisfy" the standard for judicial notice.).

Relying on the Declaration of Deportation Officer Luke Tine (Doc. 8-1), Respondents assert that Petitioner was convicted of unlawful possession of heroin and clonazepam. (Doc. 8 at 2). The state court's docket shows that Petitioner initially entered a plea of no contest to possession of heroin and possession of a schedule IV controlled substance, but the state court withheld adjudication of guilt and ordered Petitioner to complete 36 months in drug court. *See State v. Bernshtein*, No. 2019 CF 000922 (Fla. 7th Cir. Ct.). Subsequently, on January 22, 2021, the state court granted Petitioner's unopposed motion to withdraw his plea and allowed him to enter a new plea of no contest to two counts of use or possession of drug paraphernalia. (*Id.*). The state court entered judgment to that effect in February 2021. (*Id.*).

11 at 2; Doc. 8 at 2). More than four years later, on March 31, 2025, ICE re-detained Petitioner following his arrest by the Flagler County Sheriff's Office for driving under the influence. (Doc. 11 at 2; Doc. 8 at 2-3).

According to Respondents, "[o]n April 17, 2025, Petitioner refused to complete an application for travel documents." (Doc. 8 at 3). On the other hand, Petitioner responds by asserting that that he "did NOT refuse[] to complete and sign an application for a travel document."  (Doc. 9-1 at 1, ¶ 3). Nevertheless, on June 19, 2025, ERO again submitted a request for an electronic travel document for Russia and Belarus. (Doc. 8 at 3.) On September 19, 2025, ERO was informed "that neither Russia nor Belarus would issue travel documents." (*Id.*). Thirty-five days later, Petitioner's case was referred "for possible third country removal" and Headquarters Removal and International Operations ("**HQ RIO**") "is continuing to explore third-country removal options for Petitioner." (*Id.* at 4). To date, however, ICE has been unable to remove Petitioner.

Petitioner contends that he is entitled to immediate release from ICE custody under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Fifth Amendment, because his post-removal order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. (*See* Doc. 11 at 2). He claims that "ICE has made no progress and no country will accept him." (*Id.*).

3

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699

4

(emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides *good reason* to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with *evidence* sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701) (emphasis added). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v.*

*U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

### III.

Here, Petitioner was taken into ICE custody on March 31, 2025, and he filed this case 182 days later on September 29, 2025.[4] Although Petitioner had been in ICE custody longer than 180 days when this case was filed, Respondents contend that "Petitioner's refusal to complete an application for a travel document impeded ICE's ability to submit a request for an electronic travel document to Headquarters for a period of 63 days." (Doc. 8 at 7). Thus, Respondents ask the Court to apply § 1231(a)(1)(C) to toll the six-month period for sixty-three days, which would render this case prematurely filed. In support of their position, Respondents submit the Declaration of Deportation Officer Luke Tine (Doc. 8-1). Officer Tine declares that "[o]n April 17, 2025, Petitioner refused to complete an application for a travel document." (*Id.* at 2, ¶ 16). He next avers that sixty-three days later, "[o]n June 19, 2025, ERO submitted a request for an electronic travel document . . . for evaluation by the Detention and Deportation Officer . . . responsible for Russia and Belarus." (*Id.* at 2, ¶ 17).

---

[4] While this period is technically five months and twenty-nine days by calendar months, this Court will calculate the time under *Zadvydas* by the number of days. *See Akinwale*, 287 F.3d at 1052 ("Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90–day removal period plus 90 days thereafter.").

6

In response, Petitioner submits his own Declaration, averring that he "did NOT refuse[] to complete and sign an application for a travel document." (Doc. 9-1 at 1, ¶ 3). He explains in his reply that the documents presented to him were written in Russian, and he advised that he cannot read or write in Russian and he asked for the documents to be translated to English. (Doc. 9 at 2). His deportation officer agreed to get the documents translated, but after eight weeks and despite Petitioner's continued requests for the translated documents, the documents were returned to him with only fifteen of the twenty-five questions translated. (*Id.*) Nevertheless, an officer told him that it did not matter because he had already submitted the paperwork using Petitioner's signed documents from his prior detention in 2017. (*Id.*)

Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted).[5] In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); s*ee Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[6] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the

---

[5] Although district court orders are non-precedential, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[6] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701).

Whether § 1231(a)(1)(C) applies as a tolling mechanism to the six-month period (as requested by Respondents) or to the question of whether Petitioner has shown a good reason to believe his removal is not reasonably foreseeable is of no moment here. Either way, Respondents, who raised the claim that sixty-three days should be tolled from the six-month calculation, have not shown Petitioner acted in bad faith and thus, § 1231(a)(1)(C) is inapplicable here.

There is no dispute that Petitioner did not complete the application for travel documents that was presented to him on April 17, 2025.[7] But a simple

---

[7] While Petitioner does claim that he did not refuse to complete his application, (Doc. 9-1 at 1, ¶ 3), his explanation is that he would not fill out and sign the application on April 17, because the application was in Russian, a language he cannot read, (Doc. 9 at 2). Thus, there is no actual dispute as to whether Petitioner filled out the form presented to him on April 17, nor did Respondents' affidavit present any specific factual contention that conflicts with Petitioner's version of events. (*See* Doc. 18-1, ¶ 16). If there were a dispute as to fact, this Court would be obligated to hold an evidentiary hearing to resolve it. *Singh*, 945 F.3d at 1315 ("It is well-established that a court may not decide a habeas corpus petition based on affidavits alone when there are factually contested issues."). However, as explained in the paragraph that accompanies this footnote, there is no factual dispute as to Petitioner's asserted good-faith basis for failing to complete the application. Therefore, no evidentiary hearing will be held.

refusal is not enough—Respondents must show that Petitioner acted in bad faith, and they fail to do so. Indeed, Officer Tine's Declaration provides no details surrounding Petitioner's actions on April 17, 2025. *Cf. Singh,* 945 F.3d at 1315 (holding that there was a factual dispute when the government's affidavit "contend[ed] that Mr. Singh was evasive" in completing his application). Without a showing of bad faith, § 1231(a)(1)(C) does not apply here. *See Singh*, 945 F.3d at 1314 ("[T]he text makes it clear that bad faith must be proven before the removal period can be extended for failure to return a complete and accurate travel application."). Thus, the Court denies Respondents' request to toll the six-month period for sixty-three days. As such, the Court finds Petitioner's six-month period expired prior to filing this case.

Next, the Court considers whether Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. He asserts that in 2020, "ICE attempted to deport him to Russia and Belarus, but both countries denied repatriation." (Doc. 11 at 2). Thus, he was released on an order of supervision, and for the more than four years that followed, he remained within the United States but was re-detained in March 2025. (*Id.*). Over six months later, ICE still was unable to deport him, (*id.*), and Petitioner claims that "ICE has made no progress and no country will accept him," (Doc. 11 at 2).

10

Given the record, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, Respondents fail to do so.

In Officer Tine's Declaration, he confirms that on September 19, 2025, both Russia and Belarus declined to issue travel documents for Petitioner. (Doc. 8-1 at 3, ¶ 27). This appears to be no surprise given that both countries similarly refused to do so in January 2021 (*see id.* at 2-3, ¶¶ 9-10, 27), and Respondents have provided no information regarding a change in circumstances that would have led those countries to render a different decision. On October 24, 2025, Petitioner's case was referred "for possible third-country removal." (*Id.* at 3, ¶ 29). At the time of Officer Tine's Declaration (November 25, 2025), HQ RIO was "continuing to explore third-country removal options in Petitioner's case." (*Id.* ¶ 30).

Respondents' conclusion that "there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future" is solely based on their bare-bones allegation that they are "continuing to explore third-country removal options." But Respondents neither provide details relating to their plan for third-country removal nor identify any country they have contacted or plan to contact to determine whether such country will accept

11

Petitioner. Respondents were initially advised in January 2021 that Russia and Belarus would not accept Petitioner, yet ICE made no attempt to initiate third-country removal proceedings at that time. Now, it has been more than four months since Russia and Belarus again advised ICE that neither country will accept Petitioner, yet Respondents provide no evidence of their efforts to remove Petitioner to a third country. Rather, Respondents are simply "explor[ing] third-country removal options," but have failed to show that they are any closer to deporting Petitioner than they were at the time of his re-detention on March 31, 2025. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrinks.").

Based on the evidence presented, the Court finds Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*.

Accordingly, it is **ORDERED**:

1. Respondents' motion to dismiss (Doc. 8) is **DENIED**.

2. Petitioner's petition for writ of habeas corpus (Docs. 1, 11) is **GRANTED**. Respondents shall release Petitioner **within 24 hours** of this Order.

3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on February 9, 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Vladislav Bernshtein
Counsel of Record